In the Matter of CHESTER SMITH et al., Petitioners, *v.* ARTHUR LEVITT, as Comptroller of the State of New York, et al., Respondents.

Third Department, December 1, 1971.

*Carroll & Carroll* (*John B. Carroll* of counsel), for petitioners.

*Louis J. Lefkowitz, Attorney-General* (*Ruth Kessler Toch* and *Grace K. Banoff* of counsel), for respondents.

HERLIHY, P. J. The petitioners by way of a petition in this proceeding against the respondents, and in particular New York State Urban Development Corporation [hereinafter referred to as UDC], owner of 3,000 acres of land in the Town of Lysander, County of Onondaga, known as Lysander New Community, a proposed development into an 18,000 person city, seek consent pursuant to section 1 of article V of the New York State Constitution to institute a court proceeding restraining any further payments without the Comptroller's audit of State money or money under its control in connection with the development of the project.

The section of the Constitution as relevant to the present proceeding provides as follows: '' The comptroller shall be required: (1) To audit all vouchers before payment and all official accounts; (2) to audit the accrual and collection of all revenues and receipts; and (3) to prescribe such methods of accounting as are necessary for the performance of the foregoing duties. *The payment of any money of the state, or of any money under its control, or the refund of any money paid to the state, except upon audit by the comptroller, shall be void, and may be restrained upon the suit of any taxpayer with the consent of the supreme court in appellate division on notice to the attorney-general.* In such respect the legislature shall define his powers and duties ''. (Emphasis supplied.)

The italicized portion of the section originated in the Constitutional Convention of 1938 and its sponsor, now Judge FRANCIS BERGAN of the Court of Appeals, stated at the time of the proposed amendment that the section for a taxpayer's suit was to strengthen '' the requirement that the comptroller shall audit all monies of the State and the provision in respect of the

consent of the Appellate Division is to prevent unnecessary or vexatious suits ''.

Section 111 of the State Finance Law was enacted to assure and facilitate the provisions of the Constitution.

The specific illegalities alleged in the petition for consent include (1) the expenditure of moneys for the purpose of housing persons of middle and upper income and for a marina and golf course in violation of article XVIII of the Constitution and subdivision (6) of section 3 of the New York State Urban Development Corporation Act (L. 1968, ch. 174, § 3, subd. [6]); (2) the guarantee by the State of $250,000,000 in bonds of UDC pursuant to section 20 of the act in violation of articles VII and X of the Constitution; (3) the expenditure of moneys in connection with the contract between UDC and Metropolitan Development Association of Syracuse and Onondaga County, which contract is violative of article VII of the Constitution and section 5 of the act; and (4) the expenditure of moneys for the acquisition of real estate without findings at the time of acquisition as required by section 10 of the act.

In their answer respondents deny the allegations contained in the petition except they admit that UDC has expended the proceeds of its bond sales without Comptroller audit and assert as a first defense that all money under the control of the State which has been disbursed for UDC purposes has been preaudited by the Comptroller and as a second defense that the Lysander New Community is a multi-purpose project to be developed in accordance with the New York Constitution and the UDC Act and represents a valid exercise of the State's police power.

The record establishes and on this proceeding it is not contested that State money (approximately $2,500,000) appropriated and spent on the project was approved by the Comptroller, but it is contended by petitioners that the funds received from bonds and other forms of financing are also subject to audit by the Comptroller. However, petitioners seek in their brief to establish that the audit of the appropriated State money was somehow insufficient or inadequate, but these contentions have no support in the record.

In order for this court to decide whether consent to institute suit should be granted, it is necessary to determine whether money to finance the UDC project resulting from the sale of bonds, notes and other securities, constitutes '' money of the state, or of any money under its control, or the refund of any money paid to the state '' necessitating an '' audit by the comptroller ''.

Public benefit corporations created by the State for the purpose of carrying out functions determined by the Legislature to be governmental in nature are not identical with the State itself and enjoy a separate and independent existence. (See *Matter of Dormitory Auth. [Span Elec. Corp.]*, 18 N Y 2d 114; *Matter of Plumbing Assn. v. New York State Thruway Auth.*, 5 N Y 2d 420; *Storyhouse Corp. v. State of New York Job Development Auth.*, 37 A D 2d 345.) Funds of the UDC cannot be considered moneys of the State simply because the UDC is a public benefit corporation. The enabling legislation of the UDC (L. 1968, ch. 174) provides in section 28 that the "monies of the corporation" are generally to be controlled by the Commissioner of Taxation and Finance and are to be paid out by him upon requisition of such officers of the UDC as it shall authorize. The Comptroller is specifically authorized by subdivision (3) of section 28 to examine the books and accounts of UDC "from time to time" and must conduct such an examination at least once every five years or in the alternative he may accept an independent examination of such books and accounts. There is no provision in the enabling statutes which requires the Comptroller to preaudit or authorize payments of any moneys within the direct control of the UDC.

The enabling statutes do not expressly provide that the State is either directly or secondarily liable on the obligations of the UDC (cf. Public Authorities Law, §§ 369, 1813, 1819). However, an examination of the said enabling statutes discloses in subdivision (3) of section 20 that the State has obligated itself to maintain adequate reserve funds to pay the amount of principal and interest becoming due in each calendar year on all bonds of the UDC. Accordingly, the bonds of UDC might be classified as contingent liabilities on the part of the State of New York.

In *Matter of Blaikie* (11 A D 2d 196, mot. for lv. to app. den. 11 A D 2d 928) there was no liability on the part of the State as to any financial dealings of the State Harness Racing Commission and such funds as were deposited in the State Racing Fund. However, the court was unable to agree as to whether the funds in the construction account were "State funds".

The present petition and the appendix annexed thereto seek the consent of this court not only for the purpose of restraining the alleged violation of section 1 of article V of the Constitution, but also for the purpose of challenging the constitutionality of various sections of the UDC on the ground that the Comptroller is violating the constitutional auditing mandate by the manner in which the UDC is developing the Lysander New Community project.

422

The granting of consent under such circumstances would be contrary to the avowed purpose of the amendment. The Legislature has given to the said corporation broad and general powers. (See § 5.) The section of the Constitution does not authorize a challenge to the constitutionality of legislation generally.

The present record establishes that no State moneys have been expended for UDC purposes without Comptroller's audit, and further that the money received by UDC from the sale of its bonds and notes is not money of the State or money under its control, the expenditure of which would require auditing by the Comptroller. The duties of the Comptroller pursuant to section 8 of the State Finance Law and section 40 of the Executive Law do not require any preaudit of public corporations in general.

The petition failing to establish sufficient reason for the granting of consent by this court to commence an action, pursuant to section 1 of article V of the New York State Constitution, it is not necessary, in our opinion, to reach the other issues which the petitioners seek to have reviewed.

The petition should be denied, without costs.

AULISI, STALEY, JR., SWEENEY and SIMONS, JJ., concur.

Petition denied, without costs.